**Opinion filed April 28, 2011**



# In The

# Eleventh Court of Appeals

_____

## No. 11-09-00127-CR

_____

## COLONEL LIVINGSTON LEWIS, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 385th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR35139**

### MEMORANDUM OPINION

The jury convicted Colonel Livingston Lewis of aggravated sexual assault of a person sixty-five years old or older. The trial court assessed his punishment at confinement for a term of forty years in the Institutional Division of the Texas Department of Criminal Justice. Appellant challenges his conviction in a single issue. We affirm.

*Background Facts*

The victim, W.V., testified that a man entered her apartment in the early morning hours of July 19, 2008, and sexually assaulted her. W.V. was sixty-seven years old at the time, and she lived alone in the Ashton Way Apartments. She had left the door to her patio open that night because her air conditioner was not working. As she lay asleep on a sofa in her living room, she

was rushed by a man coming through her patio door. He told her not to scream as he put his hand over her mouth. Her attacker put a terry cloth rag over her face and told her not to look at him. He then raped her both vaginally and anally over the course of the next thirty minutes. After the assault concluded, the attacker told W.V. to "wash up" in her bathroom to remove DNA evidence from her body. Her eyes remained covered during this time except for a brief moment when W.V. saw her attacker from the waist down. He then instructed W.V. to go inside her bedroom and wait there until she counted to thirty. W.V.'s attacker then left her apartment during this period, after which W.V. called the police.

Detective Charles Sims of the Midland Police Department responded to Midland Memorial Hospital when notified of the sexual assault to meet with W.V. He then transported her back to her apartment after she was examined and treated at the hospital. Detective Sims recovered a large, unique shoe print from inside W.V.'s living room. He found the same shoe print outside her apartment. Detective Sims also found a chair that had been used by the attacker to climb onto W.V.'s patio.

W.V. told Detective Sims that she did not know her attacker but that she believed he was a black male in his late twenties to thirties in age with large thighs and large lips. She estimated his height to be 5'6" to 5'8" and his weight to be 200 pounds with a stocky, muscular build. Based on W.V.'s description, Detective Sims identified Marcus Boykins as an initial person of interest. Boykins was a frequent visitor to the apartment complex, and his physical build appeared to match W.V.'s description. Boykins voluntarily provided a DNA sample to Detective Sims. A subsequent comparison of his DNA to that of the semen recovered from W.V. excluded him as the source of the semen.

The DPS crime lab in Lubbock subsequently informed Detective Sims that there was a "DNA CODIS hit" for the semen recovered from W.V.[1] The CODIS manager advised Detective Sims that the source of the DNA extracted from the semen matched appellant's DNA profile. Based upon this information, Detective Sims obtained a search warrant for appellant's DNA and his residence in Midland. Detective Sims executed the search warrant on September 8, 2008. He recovered a pair of Steve Madden shoes from inside appellant's home that had the same unique shoe print that he found at W.V.'s apartment.

_____

[1]"CODIS" is an acronym for the Combined DNA Index System. *See* TEX. GOV'T CODE ANN. § 411.142 (Vernon Supp. 2010).

Detective Sims also obtained a recorded statement from appellant. Appellant stated that he had lived in the Ashton Way Apartments for two years in the past and that he was last there a month or two ago around 12:30 to 1:00 a.m. He further stated that he recalled having consensual sex with an older lady at the apartment complex. He initially stated that he entered her apartment through the front door by knocking on it. In this regard, he stated that, although he did not know the lady's name, he knew her and had been inside of her apartment on fifty to sixty prior occasions. When confronted with the presence of his shoe prints outside the patio door, appellant subsequently admitted that he climbed over the balcony and entered through the patio door. However, he continued to assert that the woman invited him inside. He stated that they talked for two hours and then they engaged in consensual sex.

Detective Sims obtained a DNA sample from appellant and forwarded it to the DPS crime lab in Lubbock. Stephen Brent Hester, a forensic scientist at the crime lab, performed a comparative analysis of appellant's DNA sample to the DNA profile extracted from the semen recovered from W.V. He concluded that appellant could not be excluded as the source of the DNA extracted from the semen. As per his report:

> The probability of selecting an unrelated person at random who could be the source of the major component in this DNA profile is approximately 1 in 5.679 septillion for Caucasians, 1 in 7.692 sextillion for Blacks and 1 in 4.958 septillion for Hispanics. To a reasonable degree of scientific certainty, [appellant] is the source of the major component from this DNA profile (excluding identical twins).

Appellant did not testify during the guilt/innocence phase. However, his trial counsel stated during his opening statement: "We have a man who openly confesses to the police he had sex with this lady." Appellant called his wife as a defense witness to testify that she and appellant knew W.V. and had been inside her apartment on occasion to borrow W.V.'s telephone while they lived in the same apartment complex. W.V. testified that she did not remember appellant or his wife when she was recalled to the stand during appellant's case-in-chief.

### Sufficiency of the Evidence

In a single issue, appellant challenges the legal and factually sufficiency of the evidence supporting his conviction. We note at the outset of our analysis that the Texas Court of Criminal Appeals has now held in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), that there is "no meaningful distinction between the *Jackson v. Virginia*[2] legal-sufficiency standard and the

---

[2] *Jackson v. Virginia*, 443 U.S. 307 (1979).

*Clewis*[3] factual-sufficiency standard;" that the *Jackson v. Virginia* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt;" and that "[a]ll other cases to the contrary, including *Clewis*, are overruled." *Brooks*, 323 S.W.3d at 895, 902, 912 (footnotes added). Accordingly, a challenge to the factual sufficiency of the evidence is no longer viable.[4]

To determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). In conducting a legal sufficiency review, we are required to defer to the jury's role as the sole judge of witness credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13.

Appellant premises his challenge to the sufficiency of the evidence on the contention that W.V. "never positively identified her attacker." He asserts that she could not give a detailed description because she was only able to get a very brief, partial glimpse of her attacker. He also contends that his height of 6'2" and weight of 400 pounds was much larger than what W.V. described to the police. He is essentially asserting that W.V. was attacked by another person that entered her apartment after he engaged in consensual sex with her and that this attacker might

---

[3]*Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996).

[4]We note that appellant did not have the benefit of the opinion in *Brooks* when this case was briefed.

have used a condom that prevented any semen from the attacker from being discovered afterwards.

As the sole judge of the credibility of the witnesses, it was the jury's role to weigh the credibility of the witnesses' testimony and resolve the conflicts in the evidence. In this regard, W.V. testified that she only had one sexual encounter that evening and that it occurred without her consent.[5] It was within the jury's province to accept this evidence as the credible account of what transpired between her and appellant. The fact that she could not identify appellant as her attacker is of no practical consequence given the DNA evidence and appellant's acknowledgment that he had sex with her. Furthermore, it was well within the jury's right to reject appellant's self-serving statement that his relations with W.V. were consensual. In support of the jury's credibility determination, we note the seemingly incredulous nature of appellant's account. We further note appellant's initial misstatement to Detective Sims that he entered W.V.'s apartment through the front door. Reviewing all of the evidence in the light most favorable to the verdict, we conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Appellant's sole issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE


April 28, 2011

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel[6] consists of: Wright, C.J.,
McCall, J., and Hill, J.[7]

---

[5]W.V. testified that she did not have sex in the fifteen years prior to this episode.

[6]Rick Strange, Justice, resigned effective April 17, 2011. The justice position is vacant pending appointment of a successor by the governor.

[7]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.